IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIAN OWEN, | No. 2:16-CV-0912-JAM-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 22).

/ / /

/ / /

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on October 3, 2012. See CAR 22.[1] In the application, plaintiff claims that disability began on December 1, 2011. See id. Plaintiff's claim was initially denied. See id. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on May 22, 2014, before Administrative Law Judge ("ALJ") G. Ross. Wheatley. See id. In an August 8, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): osteoarthritis and ligament tear of the left knee;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform a wide range of light work with a limitation to occasional climbing of ladders, ropes, and scaffolds; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant is capable of performing her past relevant work as a bank teller.

See id. at 24-30.

After the Appeals Council declined review on March 4, 2016, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

---

[1] Citations are to the Certified Administrative Record lodged on September 20, 2016 (Doc. 12).

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ improperly rejected "limitations assessed by the DDS doctors."  Plaintiff also argues that, due to this error, the ALJ's hypothetical questions posed to the vocational expert failed to accurately describe plaintiff's residual functional capacity.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

A review of the hearing decision reflects that the ALJ discussed the opinions from the following sources: (1) treating physician James Jeffrey Daley, M.D.; (2) examining psychologist Geraldine Gauch, Psy.D.; (4) treating Licensed Clinical Social Worker Pamela Marques; and (4) state agency medical reviewing consultants Drs. W. Jackson, D. Funkenstein, P.N. Ligot, and P.M. Balson. CAR 28-29. While the ALJ also discussed a December 6, 2011, report by examining physician Debra Cheang, M.D., the ALJ does not identify any opinions

regarding functioning rendered by this doctor.  See CAR 28.  The ALJ rejected the opinions of Drs. Daley, W. Jackson, D. Funkenstein, P.N. Ligot, and  P.M. Balson, and Ms. Marques, and based his disability determination exclusively on a portion of Dr. Gauch's opinion.  See id.

As to Dr. Gauch, the ALJ stated:

> The claimant attended a State Agency Psychological Consultative Examination (CE) on May 18, 2013.  The examining doctor diagnosed depression, but found that the claimant had only mild limitations in functioning [Exhibit 10F].  The doctor suggested that the claimant had fair ability to complete a normal workday or workweek, interact with others, and deal with workplace changes, all influenced by her depressed mood.  However, a fair ability to perform work activities do [sic] not suggest that the claimant would be unable to effectively perform in a work environment, but that there is only the possibility that she may have difficulties at times.  The undersigned gives substantial weight to the doctor's opinion that the claimant has only mild limitations, but does not find sufficient evidence to support the opinion that the claimant has fair ability to function in certain areas.  The claimant may lack motivation and be discouraged because she was denied a job position she wanted, which would explain her hesitancy to return to her past work of 30 years.  It is reasonable to conclude that the claimant simply decided to retire after a long and substantial work history.

Id.

The ALJ rejected the remainder of the medical opinions and found that Ms .Marques is not an acceptable medical source.  Plaintiff does not raise any argument relating to the ALJ's determination regarding Ms. Marques.

As to the ALJ's rejection of the medical opinions rendered by treating physician Dr. Daly and agency reviewing physicians Drs. W. Jackson, D. Funkenstein, P.N. Ligot, and P.M. Balson, plaintiff appears to limit his argument to Dr. Balson.  Plaintiff argues:

> There is an opinion in the record which, if properly credited, as it must be, does not allow Plaintiff to perform the job the ALJ thinks she can do. . . [¶] Here, however, the ALJ failed to properly consider this expert opinion evidence, making to finding as to the weight of this evidence. . . . The ALJ's finding that Plaintiff's mental impairments imposed no more than minimal limitations in her work-related abilities contradictory to the DDS reviewing physicians' expert opinions.  Dr. Balson expressly opined that Plaintiff could not perform her past work as a bank teller, yet the ALJ, while ignoring that opinion, found that she could.  The ALJ's finding is therefore without foundation.  His only mention of this important opinion comes obliquely, and contains none of the rationale necessary to meet even

| | |
|---|---|
| 1 | the specific and legitimate legal standard required in this Circuit. . . (Tr. 29). |
| 2 | |

Dr. Balson rendered his reconsideration level assessment, included in the record at Exhibit 3A, on October 2, 2013. CAR 82-86. Dr. Balson opined that plaintiff is moderately limited in her ability to interact appropriately with the general public, among other areas, and concluded that plaintiff should "avoid work that deals with the general public. . . ." Id. at 83. In particular, Dr. Balson opined that plaintiff is not capable of performing her past relevant work as a bank teller because that work "deals with the general public. . . ." Id. at 85.

The ALJ discussed the agency reviewing doctors' opinions, including those of Dr. Balson, as follows:

> . . .Initially, the consultants agreed that the claimant did not have any severe psychiatric impairment, but at the reconsideration level felt that she had moderate limitations in social functioning [Exhibit 1A, 3A]. However, the activities of the claimant as described her [sic] suggested that she had no significant limitations in social functioning. The undersigned has carefully considered all of the evidence and the statements of the claimant and her spouse, and concludes that she does not have any limitation in social functioning. The claimant is able to visit and interact with others, both in family and other public settings, including attendance of religious services and grocery shopping. She has had marital difficulties and discouragement due to not getting a hoped-for job position, but the evidence does not show that she would have difficulty returning to the workforce.

CAR 29.

Plaintiff argues that the activities described by the ALJ as the rationale for discounting Dr. Balson's opinion are not supported by substantial evidence.[2] According to plaintiff:

> The ALJ's method of rejecting this expert opinion was by simply, impermissibly substituting his own, incorrectly asserting that "the evidence does not show that she would have difficulty returning to the workforce" (Tr. 29). However, the actual medical evidence shows just

---

[2] To the extent plaintiff argues that the ALJ erred because his analysis "contains none of the rationale necessary to meet even the specific and legitimate legal standard," the court does not agree. Logically, if Dr. Balson's opinion that plaintiff cannot engage in work with the general public is undermined by plaintiff's actual activities with the general public, that would be a specific and legitimate reason for giving less weight to Dr. Balson's opinion.

6

that, and the ALJ's opinion is based on a misunderstanding that Plaintiff's limited daily activities somehow translate to the ability to sustain full-time work dealing with the general public. The ALJ's assertions that Plaintiff can "visit and interact with others" and that she can grocery shop and attend religious services does not survive scrutiny, as his assertion is an overstatement of her abilities. In her function report, Plaintiff explained that she engages in solitary activities such as reading and listening to music. (Tr. 190). While the ALJ states she engages with family and others, Plaintiff only mentioned having lunch or dinner with her mother, or coffee with her son, once or twice a month. (Tr. 190). When asked in the questionnaire about going to places such as church, community centers, sporting events, or social groups, Plaintiff responded, "I don't have anything or anywhere to go on a regular basis." (Id.). She added that since her impairments began, "I stay at home more often." (Tr. 191).

Since none of the ALJ's assertions about Plaintiff's social functioning are borne out by her responses in the questionnaire, one turns to the transcript of the hearing testimony to see whether she, perhaps, contradicted herself. However, she testified that she has difficulty getting out of bed; her husband does the cooking and housework, and "I get a lot of anxiety and . . . I don't really get out." (Tr. 44). Although she attends therapy sessions, but they are individual because she felt it would be too much for her to be in a group session, "because I can get really nervous being around a lot of people." (Tr. 47). As far as grocery shopping is concerned, something that was specifically mentioned by the ALJ as something Plaintiff can do, she testified that she can go, accompanied by her husband, once a month. "But otherwise he mainly does the grocery shopping." (Tr. 49). The ALJ mentioned Plaintiff's ability to go to church, and while she did testify that she and her husband attend, she added that they do not go regularly. (Tr. 49). Nor does Plaintiff engage with the neighbors: "If, when I'm able to go outside and if anyone happens to be around, or if I just go to the end of our driveway and just look down the street [;] If anybody is out there, then I will say Hi, and can maybe talk briefly. But it's not always easy for me, it can be difficult." (Tr. 49).

The court agrees with plaintiff that the activities of daily living described by the ALJ, as well as defendant in its brief herein, do not constitute substantial evidence to undermine Dr. Balson's opinion regarding plaintiff's ability to deal with the general public. Specifically, plaintiff, the ALJ, and defendant all describe largely isolated and infrequent activities with family that do not translate to an ability to relate to the general public who are strangers on a continuous basis necessary to sustain plaintiff's past relevant work as a bank teller. The court agrees with defendant, however, that any error is harmless.

/ / /

/ / /

The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set

/ / /

/ / /

forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

Here, the court applies the Batson standard because, while the ALJ provided reasons for rejecting Dr. Balson's opinion that plaintiff is moderately limited in her ability to interact with the general public, those reasons are not supported by substantial evidence. Specifically, the activities of daily living cited by the ALJ do not necessarily indicate an ability to deal with the general public. The error is harmless, however, because a finding of moderate

9

mental limitation does not require a corresponding limitation in a claimant's mental residual functional capacity. See Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007).

### IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

    1. Plaintiff's motion for summary judgment (Doc. 16) be denied; and

    2. Defendant's cross-motion for summary judgment (Doc. 22) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 15, 2018

                                           **CRAIG M. KELLISON**
                                           UNITED STATES MAGISTRATE JUDGE